J-S84001-18

2019 PA Super 106

IN RE: B.J.Z.

APPEAL OF: J.Z., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2471 EDA 2018

Appeal from the Decree Entered July 24, 2018
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): CV-2017-A9116

IN RE: N.M.Z.

APPEAL OF: J.Z., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2494 EDA 2018

Appeal from the Decree Entered July 24, 2018
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): 2017-A9116

IN RE: C.J.Z.

APPEAL OF: J.Z., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2496 EDA 2018

Appeal from the Decree Entered July 24, 2018
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): CV-2017-A9115

BEFORE: BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

OPINION BY BENDER, P.J.E.: **FILED APRIL 04, 2019**

J.Z. ("Father") appeals from the July 18, 2018 decrees that were entered on the docket on July 24, 2018, granting the petitions filed by the Buck's County Children and Youth Services Agency (Agency) to involuntarily terminate Father's parental rights to B.J.Z. (born in November of 2013), C.J.Z.

(born in August of 2011), and N.M.Z. (born in November of 2009) (collectively

"Children").[1,2]  After review, we affirm.

The trial court provided the following factual and procedural background

of this case, stating:

> The Agency first received a referral regarding this family in 2009 when the oldest child, N.M.Z.[,] was born and tested positive for methadone.  The Agency was concerned at that time with Mother's level of drug treatment compliance.[4]  In-home services were provided and that Agency referral was closed in 2011, several months prior to C.J.Z.'s birth.
>
> > [4] Just prior to N.M.Z.'s birth, Mother had involvement with the Agency regarding another child whom she voluntarily relinquished.  That child was later adopted.
>
> The family's case was reopened on January 29, 2013, due to ongoing concerns as to [] Children being inadequately supervised, the condition of the home, substance abuse by the parents, [] Children not be[ing] appropriately dressed, and C.J.Z. being developmentally delayed.  General protective services were in place at the time of B.J.Z.'s birth in 2013.  A family service plan was created and the Agency provided services to assist the family during the next three (3) years.  However, as a result of the parents' noncompliance with the requirements of the support housing program, they were evicted from their home.  Following the eviction the family moved to a hotel.  A voluntary placement with the Agency agreement for the Children was signed by the parents in August 2016, when the parents could no longer pay for the hotel and became homeless.

---

[1] These appeals were consolidated *sua sponte* by *per curiam* order of this Court, as all of these matters involve related parties and issues.  Order, 9/19/18.

[2] The parental rights of Children's mother, D.V. ("Mother"), were terminated by separate decrees entered on the same date.  Mother has also filed appeals, which are addressed in a separate memorandum at Nos. 2499 EDA 2018, 2505 EDA 2018, and 2506 EDA 2018.

[] Children were adjudicated dependent on September 2, 2016 by Order signed by Judge Mellon of this bench, and all 3 Children have remained in the custody of the Agency since that time. Both parents have failed to adequately comply with the Permanency Placement Plans that were implemented. On November 6, 2017, the Agency filed the subject Petitions for the Involuntary Termination of Father's Parental Rights under § 2511 (a)(2), (5), and (8). On August 17, 2018, Father filed a timely appeal of our July 18, 2018 Decrees in the Superior Court.

Trial Court Opinion (TCO), 9/26/18, at 2-3 (citations to record omitted).[3]

On appeal, Father presents the following issues for our review:

1. Did the [t]rial [c]ourt commit reversible [error] by permitting the court appointed counsel for … [C]hildren to make hearsay statements on the record of [] [C]hildren's wishes over [Father's] objections and by considering such statements as evidence thus violating P[a.] Rules of Evidence 802 and denying [Father] due process of law?

2. Did the [t]rial [c]ourt commit reversible error by refusing to hear … [C]hildren's testimony and denying [Father] the right to question [] [C]hildren when the court had permitted hearsay testimony of [] [C]hildren through their court appointed counsel in violation of P[a.] Rules of Evidence 802 and [Father's] right to due process of law?

3. Did [the Agency] fail to meet the requirements of 23 Pa.C.S.[] § 2511(a)(2)[,] (5)[,] and (8) and [the Agency] has not produced clear and convincing evidence that the minor [C]hildren were not bonded, that the termination of [F]ather's parental rights would best serve the needs and welfare of [] Children[,] nor that he is unable to remedy the issue that caused [] [C]hildren [to] be taken into care?

Father's brief at 4.

_____

[3] We note that a guardian *ad litem* ("GAL"), Emily Ward, Esq., and a child advocate, Linda Shick, Esq., were appointed to represent the best interests and the legal interests of Children. Both attorneys participated in the termination hearing and filed briefs in this appeal.

With regard to the first two issues raised by Father, he claims that the court erred by allowing statements made by the two oldest Children into evidence by way of statements to the court made by Children's legal-interests attorney. Father asserts that because the court never spoke directly to Children or allowed Father to question Children during the court proceeding, the court therefore relied on inadmissible hearsay in rendering its decision.

In its opinion, the trial court states that it "believe[s] that the issue of whether [] Children's legal[-]interests counsel may speak on their behalf is an issue of first impression at the trial court level in the Commonwealth…." TCO at 6. The court explained:

> This [c]ourt has given a great deal of thought to this issue. We have extensively considered the [**In re: Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017),] opinion which mandated the utilization of child[-]directed legal counsel in certain cases, but provided no guidance as to the logistical means of incorporating [] Children's wishes into the record. We considered the use of the word "express" in the **L.B.M.** opinion, which we find has significant meaning regarding counsel's role in relaying [] Children's desires. We also considered statutory law applicable to Dependency Court at 42 Pa.C.S. § 6311 and Rule 1154 of Dependency Court[,] which is found in 237 Pennsylvania Code, which, while not binding in Orphans' Court, we find to be persuasive and logical.
>
> Accordingly, we held that there exists a rebuttable presumption against children having to testify and suffer the associated trauma in proceedings such as this, whether it is in open court or in chambers, or in the presence of attorneys, subjected to cross-examination. This [c]ourt held that it is permissible for the legal[-]interests counsel to advise the [c]ourt regarding [] Children's wishes, to the extent that those wishes can be ascertained. We permitted adverse counsel to argue against the weight of the legal[-]interests counsel's expression of [] Children's wishes based on relevant factors such as, but not limited to, diminished capacity of a child, the mental health status

- 4 -

of a child, the emotional maturity status of a child, and the legal[-]interests counsel's alleged failure to establish a sufficient basis for ascertaining the respective Child's preferred outcomes. This [c]ourt gave the evidence offered and expressed as to [] Children's wishes the weight to which it was deemed entitled under the circumstances of this particular case.

At the hearing, [] Children's legal[-]interests counsel shared her encounters with B.J.Z., C.J.Z., and N.M.Z. We provide, verbatim, excerpts from the record as follows:

> [N.M.Z.] I was able to have a pretty good conversation with...did he understand why he was living with the [foster family,] did he understand why he only visited with his parents...--how he would like things to continue.
>
> [C.J.Z.] I was able to have that same conversation with, ... he answered me appropriately. [C.J.Z.]...he seemed to understand within that framework.

(N.T. 1/30/2018, pp. 194-195).

On her second visit, legal[-]interests counsel met with each Child individually. While it was difficult to have a conversation with the youngest due to his age and maturity level, the other two Children participated in conversation and understood the ramifications of their desires as expressed to their legal[-]interests counsel.

> [W]e talked about...what [] parents' rights are, and we talked about what...this hearing was about whether or not their parents were going to be allowed to keep those rights, because the [c]ourt was going to determine whether or not they were doing a good job at that. Since it affected them, [the Judge] would want to know what they would want to have happen. And I told them that their parents had all kind of rights to decide where they go to school, if they go to church, what clothes they wear, if their hair gets cut, what doctors they see, if they sign up for soccer. I went through a long list[] of things that parents get to do...they know that they've been in foster care for a number of years, and they know that their parents

have not been doing those things, and they know that the [foster parents] are now doing those things.

We talked about...what they want me to tell you...[.] They both know you're supposed to tell the truth.

They both...had an understanding...of the seriousness [and that] it was not a fun meeting. It was not a playful meeting. I was very serious with them. They both looked at me in the eye when they talked to me, and I think I have a good perception of what—what both of them want me to tell you.

(N.T. 1/30/2018, pp. 196-199).

[] Children's legal[-]interests counsel shared additional insights and represented that [] Children very much want to stay with their foster parents, even if they do not see their parents for a potentially long period of time. [] Children feel "safe and happy" with the foster family, and even though they love their mother and father, they know their parents have not taken appropriate care of them and are still unable to do so at this time.

"[A] child's legal interests...are synonymous with the child's preferred outcome...[.]" *In re Adoption of L.B.M.*, 161 A.3d at 174. Here, we heard from all counsel and appreciate the compelling arguments offered in response to the issue of hearsay as it relates to the representations of [] [C]hildren's legal[-]interests counsel. We do not believe that the Supreme Court of Pennsylvania would mandate that children in these hearings must testify under the rationale that it would otherwise be permitting inadmissible hearsay. Such a decision would likely cause additional distress and long-lasting, if not permanent, emotional impact on children. Such a mandate appears inconsistent with the Supreme Court's directive in the *L.B.M.* case[,] which imposes the utilization of child[-]directed legal counsel.

Accordingly, it is logical that the trial court may hear and rely, to the extent the court deems appropriate, [on] the representations of the child through their legal[-]interests counsel. In the instant matter, based on the above analysis and considerations, we accepted legal[-]interests counsel's representations to the [c]ourt. Counsel represented that [] Children, particularly the older two, seven (7) and eight (8) years

old, understood the nature of the relevant proceedings as well as the ramifications of the potential determination that the termination of their parents' parental rights was appropriate pursuant to § 2511(a) and in their best interest pursuant to § 2511(b). Counsel was confident that the older Children clearly and unequivocally expressed their desired outcome. We heard no basis for discrediting or diminishing the weight of legal[-]interests counsel's representations. Based on the above analysis, we submit there is no merit to [Father's] first two matters complained of on appeal.

TCO at 6-9 (some citations to record omitted).

We agree with the trial court's position on Father's first two issues. In addition to the court's reliance on the **L.B.M.** case, "we note that testimony as to what a child tells other people is admissible in order to establish that child's mental state at the time he or she made the comment." **In re Child M.**, 681 A.2d 793, 800 (Pa. Super. 1996). The **Child M.** case involved a termination of a mother's parental rights, wherein the mother questioned whether the trial court erred "by admitting hearsay statements of the child into evidence and by refusing to require the child to testify…." **Id.** at 796. This Court declined to create a requirement that "would entitle a natural parent to force an abused child to testify in an involuntary termination proceeding." **Id.** at 798. Moreover, this Court agreed that mental health professionals, caseworkers, and the foster parents could testify about their direct observations of the child's conduct. Furthermore, the **Child M.** opinion provided that "testimony as to what a child tells other people is admissible in order to establish that child's mental state at the time he or she made the comment." **Id.** at 800.

Additionally, in *In re B.L.L.*, 787 A.2d 1007 (Pa. Super. 2001), a termination case, an issue on appeal asserted an error by the trial court when it refused to schedule an additional hearing to allow the child to testify. The *B.L.L.* opinion discussed the differences between custody, adoption and termination cases, summarizing its conclusions as follows:

> [I]n custody proceedings there is no mandatory provision for providing counsel for the child, whereas in termination and adoption proceedings, the child must be represented by counsel. The burden of proof in custody and adoption cases is competent evidence, or preponderance of evidence to support the Order or Decree. The proof required in involuntary termination proceedings is clear and convincing evidence. In custody and adoption hearings, the testimony of the child, if relevant, is required to be placed on the record subject to interrogation by counsel under the supervision of the court. Finally, in involuntary termination proceedings, the testimony of the child is not a requisite part of the inquiry, which focuses entirely on the parenting capacity of the parent. No statute or case law exists which requires or permits the child's testimony to be an element of that review.

*Id.* at 1016.

We also note that in *In re T.S.*, 192 A.3d 1080 (Pa. 2018), our Supreme Court, discussing a situation where a child is too young to verbalize his or her preferred outcome, relied on Section 6311 of the Juvenile Act, 42 Pa.C.S. § 6311(a), which concerns the appointment of a guardian *ad litem* to represent the legal and best interests of a child. The *T.S.* court noted that Section 6311(b)(9) provided that the guardian *ad litem* must "advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. 42 Pa.C.S. §

- 8 -

6311(b)(9)." *Id.* at 1089. Although the situation in the instant case concerns

two of three Children, who are able to verbalize their wishes, the *T.S.* case

provides guidance and persuades us, in addition to all of the above, that the

trial court did not err in allowing Children's legal-interests counsel to provide

the court with information as to Children's position on the question of parental

termination. The trial court did not err in concluding that Father's first two

issues do not provide him with relief.[4]

Next, we address Father's third issue and begin by setting forth the

applicable standard of review:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

---

[4] We note that Father relies on *In re Adoption of M.D.Q.*, 192 A.3d 1201 (Pa. Super. 2018), suggesting that it is factually similar to the instant case because the children were of a similar age to the two older children here. In *M.D.Q.*, the children's father and stepmother petitioned to have the parental rights of the children's mother terminated. This Court's reason for vacating and remanding the *M.D.Q.* case rested on the failure of the appointed attorney, representing the children's legal interests, to make clear on the record the children's preferred outcome. Rather, the attorney's statements appeared to focus on what she believed to be best for the children. That is not the circumstances in the case presently before this Court.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

- 10 -

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted).  The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.  *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section.  This Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child."  In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond.  *Id.*  However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists.  *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008).  Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(2), (5), (8) and (b).  We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

     (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

     In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot

- 12 -

be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." **In re A.L.D.**, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Initially, Father acknowledges that he has not met the criteria to have Children returned to his care, mainly because he did not have adequate housing and was not employed. However, he contends that he has made substantial progress and that "the Agency has failed to establish that the placement of [] [C]hildren was irredeemable and therefore … he should be afforded additional time to seek return of his [C]hildren to his care." Father's brief at 39.

With regard to Section 2511(a)(2), the trial court provided an extensive review of the testimony provided by Victoria Kane, a social worker with the Agency. **See** TCO at 10-15. One of the items the court noted was that Father was inconsistent in his visitation with Children. However, in summarizing its conclusion, the court stated that,

> [b]ased on the evidence and testimony provided, and in conformity with the pertinent statutory and decisional law, we found that Father has failed to remedy his parental incapacities for a substantial time period. These incapacity factors include housing, employment, and drug and mental health issues. It appears, clearly and convincingly, that the causes of Father's ongoing parental incapacities will not be remedied.

TCO at 15.

Having reviewed the record, we conclude that it supports the findings of the trial court that Father has not provided Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Father is unable to remedy the causes of his parental incapacity, neglect or refusal any time in the foreseeable future. Thus, we agree with the trial court that Father is not entitled to any relief.

Next, we consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed the required analysis under Section 2511(b) previously in this opinion. *See In re Adoption of J.M.*, 991 A.2d at 324. The trial court provided the following discussion in response to Father's contention that the record does not support the criteria under Section 2511(b):

> [] Children[] have resided with their present foster parents since November 17, 2017, having begun respite care at the foster home on the weekends for the month prior to their transition to this foster family. The foster parents were and are comfortable with fostering all three Children, and understand [] Children's respective behavioral issues. The foster parents have biological twin boys the same age as the oldest child, N.M.Z.

> Ms. Kane testified that the foster home has been a good fit for [] Children. The "whole family is very supportive of them." She testified further:

>> [T]he Children are very hyperactive and need constant redirection in their behaviors. [The foster parents] have very calm demeanors. They don't get worked up…[a] lot of the behaviors are attention seeking…so they're not feeding into the behaviors to make them worse. And they seem committed to help these kids really stabilize their behaviors.

> They…are eager to welcome the Children into their family…and want to have them long term.

(N.T. 1/30/2018, p. 84).

We heard testimony from Ms. Kane about the foster parents being affectionate toward [] Children, and [] Children reciprocating that affection. The foster parents' biological children receive speech services, just as N.M.Z and C.J.Z. do. The twins and N.M.Z. are in the same classroom at school, and have exhibited an appropriate bond with each other. The twins have been a positive influence on N.M.Z. Finally, Ms. Kane testified that the youngest Child, B.J.Z., was essentially non-verbal when he came into care. The foster parents have been very supportive and helpful in that regard. B.J.Z. has become very vocal and now speaks in full sentences. We heard uncontroverted evidence of a strong bond between the foster family and these three Children. The foster parents have expressed an interest in adopting B.J.Z., C.J.Z. and N.M.Z.

When considering what situation would best serve a child's needs and welfare, the trial court must examine the status of the natural parental bond and whether terminating the natural parent's rights would destroy something in existence that is necessary and beneficial to the child.

> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well…[.] Additionally, Section 2511(b) does not require a formal bonding evaluation…[.] "Above all else…adequate consideration must be given to the needs and welfare of the child." … A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights…[.]

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial

- 15 -

court, in considering what situation would best serve the child's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re Z.P.*, 994 A.2d 1108, 1121 [(Pa. Super. 2010)] (internal citations omitted).

We found termination was warranted here, a result advanced not only by the Agency, but by the court-appointed best[-]interests counsel for [] Children and by separate court-appointed legal[-]interests counsel for [] Children. The record contains clear and convincing evidence that Father has not made reasonable or consistent strides toward adequately being able to parent the Children. The evidence suggests that Father, while hopefully continuing his sobriety achieved at Guadenzia, has never valued obtaining an AA sponsor, has been unwilling to pursue mental health treatment, and has perpetuated his long history of failing to establish adequate employment or housing. Indeed, the evidence presented, including by Father, lacked any indication of reasonably reliable future plans by Father to provide adequate housing and support for himself and [] Children.

Importantly for the [c]ourt's best interests analysis, the record is devoid of evidence of a necessary and beneficial relationship between Father and [] Children, the existence of which, should Father's rights be terminated, would result in a negative effect on [] Children. In sum, the record contains clear and convincing evidence that Father has been, and continues to be, incapable of adequately parenting B.J.Z., C.J.Z., and N.M.Z.

"[T]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *Id. See M.E.P.*, 825 A.2d at 1276 ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citations omitted). Here, Father has repeatedly failed to remedy his parental incapacities and when these considerations are balanced against [] Children's needs for permanence and stability, this [c]ourt concluded that it was in the best interests of B.J.Z., C.J.Z. and N.M.Z. to grant the Agency's Petition to Terminate Father's Parental Rights.

- 16 -

TCO at 18-20 (some citation to the record omitted). Again, we have reviewed the record and conclude that the court's findings and conclusions are supported by the evidence of record before the trial court. It is evident that Father is primarily seeking to have this Court reweigh the evidence in a light more favorable to him. However, it is beyond our purview to disturb the credibility determinations of the trial court when the testimony relied upon is supported in the record. The trial court was free to conclude that Father was unlikely to remedy his problems in the near future; thus, the permanency needs of Children dictate the results here. Father is not entitled to relief.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/19