J-S32046-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.W., FATHER | : | |
| | : | No. 778 EDA 2020 |

Appeal from the Order Entered February 6, 2020
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000333-2019

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 21, 2020**

Appellant D.W. (Father) appeals from the order involuntarily terminating his rights to 9-year-old daughter S.S.W. (Child), pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (2) and (b).[1]  After review, we affirm.

The relevant factual and procedural history is as follows:  The family came to the attention of the Philadelphia Department of Human Services (DHS) in 2015 after the agency received a report that Child's school-aged siblings were truant from the Philadelphia School District.  DHS monitored the situation by conducting investigations and home visits, and ultimately

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the rights of S.S. (Mother).  Mother's appeal, which also concerns S.S.W.'s siblings, is also listed before this panel, but is addressed by a separate memorandum.  S.W.'s siblings include a half-brother, S.J. (age 11); and half-sisters, L.S.-J. (age 6), and K.J. (age 3).  There is another half-sister, A.J. (age 15), but her case was not a part of the termination proceedings as her whereabouts were unknown.

determined that the Children were safe. Although Father may have been involved in the Child's care in some capacity, he did not reside with the family. DHS held a single case plan meeting to establish various goals to stabilize the family.

In December 2016, Mother was arrested on a simple assault charge, pleaded guilty, and received a sentence of 12 months of probation. Thereafter, DHS was unable to verify that the Children received medical care. Mother was using marijuana and failed to follow through with her single case plan goals. DHS was finally able to contact Father to determine whether he could be a placement option; however, Father abruptly left the meeting and never made himself a resource. DHS filed dependency petitions in May 2017.

In June 2017, the juvenile court adjudicated the Children dependent; however, they were not removed from Mother's physical care. The court ordered DHS to implement services to stabilize the home, including beds for Child and her siblings. At the ensuing permanency review hearing in September 2017, the court learned Mother was incarcerated following a probation violation. By December 2017, the juvenile court placed the Children in the care of the Maternal Grandfather. The Children were eventually placed in three separate pre-adoptive foster homes. In any event, none of the Children returned to parental care after December 2017.

By May 2018, Mother was released. DHS revised the parents' single case plans. Father's goals included: 1) ensure Child attended school daily and completed assignments; 2) sign consents to ensure Child attends medical

appointments and follow up with treatment recommendations; 3) attend parenting classes; 4) make himself available to DHS; 5) submit to random urine screens. Father was not compliant with these goals. In April 2019, DHS petitioned for the termination of Father's rights and to change the goal of the dependency case from reunification to adoption. The trial court conducted the consolidated hearing over the course of two dates: November 26, 2019 and February 6, 2020. Father chose not appear for either date, but he was represented by counsel. The court granted the petition and terminated Father's rights. He timely filed this appeal.

Father presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, D.W.[,] pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) where [F]ather presented evidence that he substantially met his [Family Service Plan] goals and tried to perform his parental duties[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, D.W.[,] pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) where [F]ather presented evidence that he has remedied his situation by taking parenting, drug treatment and receiving mental health treatment [?] Father has the present capacity to care for his [C]hild.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, D.W.[,] pursuant to 23 Pa.C.S.A. [§] 2511(b) where evidence was presented that established the [C]hild had a strong parental bond with [F]ather[?]

Father's Brief at 8.

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

In this case, the court terminated Father's parental rights pursuant to subsections 2511(a)(1)(2), (5), (8), and (b). Those subsections provide:

**(a)** **General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

[…]

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) ... or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2) and (b).

This Court need only agree with the court as to any one subsection of 2511(a), as well as subsection 2511(b) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Therefore, we analyze the trial court's decision to terminate under Section 2511(a)(2) and (b).

We begin with Section 2511(a)(2). Regarding this section, we have previously stated the following:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.,* 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). Moreover, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re B.J.Z.*, 207 A.3d 914, 922-923 (Pa. Super. 2019) (citation omitted).

Instantly, Father argues that he worked toward completing his reunification goals, that there was no evidence he was asked to submit to drug/alcohol screens, nor was there evidence that he was invited to attend Child's medical appointments. *See* Father's Brief at 16. Father contends that he was involved in Child's life prior to her dependency adjudication and that he was presently able to provide a safe home to Child. *Id.* Father concludes the court erred because he had the present capacity to care for Child. *Id.*

Upon our review, we disagree with Father's contentions. Father did not offer himself as a placement resource when Mother was incarcerated in April 2017. The caseworker testified that she repeatedly tried to contact Father,

- 6 -

but her efforts failed. Father never complied with a home assessment or proof of housing during the life of the case. Father did not participate in Child's educational planning or medical treatment. Father did not consistently visit Child. In fact, he became aggressive during the visits he did attend and blamed Child for her being in foster care. Consequently, the trial court had to suspend his visitation. Clearly, he did not have the present capacity to care for Child at the time of the termination hearing, as evidenced, among other reasons, his outstanding bench warrant. *See generally* N.T., 11/26/19, at 30-35. Because Father did not appear at the termination hearing, he could not contest the caseworker's testimony or evidence. We conclude that the trial court did not abuse its discretion when it found DHS met its burden of proof under Section 2511(a)(2). Therefore, Father's contentions concerning Section 2511(a) are without merit.

Next, we address whether termination best served the Children's needs and welfare under Section 2511(b). Regarding this portion of the analysis, we have previously stated:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, section 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by

the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

Regarding his second appellate issue, Father focuses only on the bond aspect of the Section 2511(b) analysis. He argues that because he was present for the first seven years of her life, there is a parental bond. He concludes the court abused its discretion by terminating his rights under Section 2511(b). *See* Mother's Brief at 16-17.

Father misconstrues the bond inquiry. The question is not whether one exists, but whether the bond is worth preserving. When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences." *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1992). Notwithstanding the fact that Father had been absent from Child's life during her dependency case, Child did not have any issues resulting from the lack of contact. The caseworker testified that Child does not see Father as her parent, because he was never around long enough

to form such a relationship. Moreover, the caseworker testified that Child told her she wished to be adopted. This comports with Child's legal counsel, who also expressed an understanding of the termination and adoptions proceedings, and Child's desire to be adopted by the foster parent. *See* N.T. 11/26/19, at 45-46; *see also* N.T., 2/6/20, at 24, 67-68. No parental bond exists, but even if one existed, it would not be the sort worth preserving. We conclude the trial court did not abuse its discretion in finding that DHS met its burden under Section 2511(b). Father's final appellate argument is without merit.

In sum, we conclude the trial court did not err or commit an abuse of discretion by finding involuntary termination of Father's rights was warranted under Section 2511(a)(2) and (b) of the Adoption Act.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/20