J-A01043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2322 EDA 2023 |

Appeal from the Order Entered August 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-00001195-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2323 EDA 2023 |

Appeal from the Decree Entered August 30, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000196-2023

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E, and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED APRIL 29, 2024**

L.F. (Father) appeals from the decree entered August 30, 2023 by the Court of Common Pleas of Philadelphia County Juvenile Division that involuntarily terminated his parental rights to his daughter, A.J.F. (Child), who was born in 2020.  Father has also appealed from the order of the same date

_____

* Retired Senior Judge assigned to the Superior Court.

changing Child's permanency goal from reunification to adoption. After careful review, we affirm.

After receiving a report when Child was born that her mother, N.L. (Mother), tested positive for cocaine, fentanyl, and methadone, the Philadelphia Department of Human Services (DHS) provided services to Mother, Father, and Child, who was living with Mother and Father, until June 2021, when DHS concluded that Child was safe and discontinued services. N.T. at 16-18, 45; Dependency Petition ¶¶5(b)-5(i); Dependency Order at 1. On October 30, 2021, DHS received a report that Mother and Father were not properly caring for Child. N.T. at 17-18; Dependency Petition ¶5(j); Dependency Order at 1. Following unsuccessful attempts to contact Mother and Father, DHS conducted an unannounced home visit on November 16, 2021 and found Mother under the influence of drugs and in sole care of Child. Dependency Petition ¶¶5(k)-5(l); Dependency Order at 1. DHS obtained an order of protective custody for Child on November 16, 2021, and Child was placed in foster care. N.T. at 18; Order of Protective Custody; Shelter Care Order. DHS filed a dependency petition on November 23, 2021, and, following a hearing, Child was adjudicated dependent, and Mother and Father were given weekly supervised visits with Child. N.T. at 18; Dependency Order.

Father's permanency plan objectives were attending parenting classes, attending family school, maintaining employment, maintaining appropriate housing, complying with visitation, and formulating a childcare plan. N.T. at

30-31; Permanency Review Order, 3/30/22, at 2; Permanency Review Order, 5/19/22, at 2. In March 2022, the court found that Father's compliance with his permanency plan was moderate. Permanency Review Order, 3/30/22, at 1. After March 2022, however, Father's compliance was found to be minimal. Permanency Review Order, 5/19/22, at 1; Permanency Review Order, 10/19/22, at 1; N.T. at 33. Mother's compliance with her permanency plan was only minimal. Permanency Review Order, 3/30/22, at 1; Permanency Review Order, 5/19/22, at 1; Permanency Review Order, 10/19/22, at 1.

On May 17, 2023, DHS filed petitions to terminate both Father's and Mother's parental rights and to change Child's permanency goal to adoption. The trial court held a hearing on both petitions on August 30, 2023 at which two witnesses, Child's case manager and Father, testified. Child was represented by counsel at this hearing.[1] At the close of the hearing, the trial court terminated Father's and Mother's parental rights, finding that DHS had satisfied its burden of proving grounds for termination under Sections 2511(a)(1), (2), (5), and (8) and Section 2511(b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and ordered Child's permanency goal changed to adoption. N.T. at 63-66; Decree of Involuntary Termination

_____

[1] The attorney for Child was also the guardian *ad litem*. The trial court considered whether this created a conflict and ruled that it did not, given Child's very young age. N.T. at 7-8.

- 3 -

of Father's Parental Rights; Permanency Review Order, 8/30/23. Father timely appealed from both orders. Mother did not appeal.

Father raises the following six issues in this appeal: (1) whether the trial court erred in terminating his parental rights under 2511(a)(1) of the Adoption Act; (2) whether the trial court erred in terminating his parental rights under 2511(a)(2) of the Adoption Act; (3) whether the trial court erred in terminating his parental rights under 2511(a)(5) of the Adoption Act; (4) whether the trial court erred in terminating his parental rights under 2511(a)(8) of the Adoption Act; (5) whether the trial court erred in finding that the best interest of the child was served by terminating his parental rights pursuant 2511(b) of the Adoption Act; and (6) whether the trial court erred in ordering that Child's permanency goal be changed to adoption. Appellant's Brief at 5-6.

Our standard of review of Father's first five issues is clear:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (quoting *In re R.N.J.*, 985 A.2d 273 (Pa. Super. 2009)). We conclude that the trial court's findings are

- 4 -

supported by the record and that it did not err in holding that the requirements for termination of parental rights were satisfied.

Under Section 2511 of the Adoption Act, the courts must engage in a bifurcated analysis prior to terminating parental rights. *B.J.Z.*, 207 A.3d at 921; *In re Adoption of J.N.M.*, 177 A.3d 937, 942 (Pa. Super. 2018); *In re I.E.P.*, 87 A.3d 340, 344 (Pa. Super. 2014). Initially, the focus is on the conduct of the parent, and the party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies one of the 11 statutory grounds for termination set forth in Section 2511(a). 23 Pa.C.S. § 2511(a)(1)-(11); *In re Adoption of A.H.*, 247 A.3d 439, 442 (Pa. Super. 2021); *J.N.M.*, 177 A.3d at 942; *I.E.P.*, 87 A.3d at 344. If the court determines that the parent's conduct warrants termination of his parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b), a determination of the needs and welfare of the child under the standard of best interests of the child. 23 Pa.C.S. § 2511(b); *B.J.Z.*, 207 A.3d at 921; *J.N.M.*, 177 A.3d at 942; *I.E.P.*, 87 A.3d at 344.

The trial court terminated Father's parental rights to Child under Sections 2511(a)(1), (2), (5), and (8). Only one ground for termination under Section 2511(a) need be shown to support the termination of parental rights, however, and we therefore need only agree with the trial court as to one of these subsections, in addition to Section 2511(b), in order to affirm the termination of parental rights. *Interest of M.E.*, 283 A.3d 820, 830 (Pa.

Super. 2022); **A.H.**, 247 A.3d at 442; **J.N.M.**, 177 A.3d at 943. We conclude that the evidence was sufficient to support termination under Section 2511(a)(8) and (b).[2]

Section 2511(a)(8) and (b) provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>       *            *            *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
>       *            *            *
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

To satisfy Section 2511(a)(8), the petitioner must show three things: (1) that the child has been removed from the care of the parent for at least

---

[2] We therefore need not and do not address Father's first three issues, concerning Sections 2511(a)(1), (2), and (5).

12 months; (2) that the conditions that led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. **M.E.**, 283 A.3d at 832; **J.N.M.**, 177 A.3d at 943; **In re Adoption of R.J.S.**, 901 A.2d 502, 511 (Pa. Super. 2006). Termination under Section 2511(a)(8) does not require an evaluation of the parent's willingness or ability to remedy the conditions that led to removal of the child. **M.E.**, 283 A.3d at 832; **R.J.S.**, 901 A.2d at 511.

> The application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal …. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

**I.E.P.**, 87 A.3d at 345-46 (brackets omitted) (quoting **In re J.F.M.**, 71 A.3d 989 (Pa. Super. 2013)).

Here, the record undisputably showed that more than 12 months had elapsed since Child was removed from Father's care, as Child was removed from Father's and Mother's care in November 2021, 21 months before the termination hearing and 18 months before the termination petition was filed and has been in foster care since that date. N.T. at 10-11, 18, 43; Shelter Care Order at 2; Dependency Order at 2.

The trial court's determination that the conditions that led to Child's removal still existed at the time of the termination hearing is supported by the

evidence. The case manager testified that Father did not attend family school and that he did not enroll in parenting classes until March 2023 and had not completed the parenting classes at the time of the hearing. N.T. at 31. Father attended only 52 of 88 supervised visits with Child that were offered to him, and he did not reach the point where unsupervised visits could be allowed because of his failure to complete parenting classes and comply with his permanency plan. *Id.* at 33, 38-39. Father also never attended Child's medical appointments or asked about what took place in the appointments, although the case manager testified that Father was informed of the appointments. *Id.* at 43, 46-47. The case manager testified that during visits, Father disregarded advice from Child's doctor not to give Child juice that caused her gastrointestinal problems. *Id.* at 41-44.

The case manager further testified that Father did not have appropriate housing for Child, as the housing that Father planned to provide was a small residence that he informally occupied with no lease and Father would not cooperate with obtaining a lease or enabling DHS to fully evaluate his housing. N.T. at 31-32, 34-35, 48-50. She testified that despite the fact that leaving Child without adequate care was the reason for the removal, Father never submitted a childcare plan or showed that he had adequate childcare arrangements. *Id.* at 32-33, 45. The case manager concluded that Father's compliance with his permanency plan had been minimal and that Father had

made no progress toward alleviating the circumstances that led to Child's removal. *Id.* at 33.

The case manager did testify that Father had been more involved with Child at visits after he and Mother began having separate visits with Child and that he was scheduled to complete parenting classes in September 2023, and Father testified that as of the date of the hearing he had assembled a list of 10 daycare facilities near where he lives. N.T. at 37-38, 47-48, 54-55. That evidence, however, showed only that Father was making some belated efforts and partial progress 21 months after Child was removed from his care, not that he was capable of safely parenting Child, and did not require the trial court to find that the conditions that led to Child's removal from his care no longer existed.

The trial court's conclusion that termination of Father's parental rights would best serve Child's needs and welfare is also supported by the evidence.[3] The case manager testified that Child has been with the same foster parents for over half of her life and all of her life since she was less than two years old, that Child's foster parents have met all of Child's needs and provide her

---

[3] Although both Section 2511(a)(8) and Section 2511(b) direct the court to evaluate the needs and welfare of the child, the requirements of these two sections are distinct and the analysis relative to Section 2511(a)(8) must be conducted prior to addressing the needs and welfare of the child under Section 2511(b). *I.E.P.*, 87 A.3d at 346.

a safe home, and that Child is bonded with her foster parents, who are willing to adopt her, and calls them mother and father. N.T. at 10-16, 43-45.

The trial court likewise did not err in finding that the requirements of Section 2511(b) were satisfied. Under Section 2511(b), the trial court must "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child include intangibles such as love, comfort, security, and stability. *In the Interest of K.T.*, 296 A.3d 1085, 1106 (Pa. 2023); *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *M.E.*, 283 A.3d at 836. The Section 2511(b) analysis is focused on the needs and welfare of the child over the concerns of the parent, and the child's particular developmental, physical, and emotional needs must be assessed on a case-by-case basis. *K.T.*, 296 A.3d at 1105. The trial court must consider the emotional bond between the parent and child, with the inquiry being whether termination will sever a necessary and beneficial relationship, such that the child would suffer extreme emotional consequences or significant, irreparable harm. *Id.* at 1109-10; *M.E.*, 283 A.3d at 836-37; *J.N.M.*, 177 A.3d at 943-44. A court engaging in a Subsection 2511(b) inquiry must also consider, as appropriate, the child's need for permanency and length of time in foster care; the child's placement in a pre-adoptive home and whether there is a bond with the foster parents; and whether the foster home meets the child's developmental, physical, and emotional needs. *K.T.*, 296 A.3d at 1113.

Here, as noted above, the record showed that Child had spent 21 months in foster care with the same foster parents and that Child's foster parents have met all of Child's needs and have provided a safe home for her. N.T. at 10-14, 16. The trial court considered the Child's bonds with both Father and her foster parents. *Id.* at 65-66. The court found that there was a positive bond between Child and Father in that Child had positive interactions with him in his visits, but that Child looks to her foster parents and not to Father to meet her needs and that severing the bond with Father would not destroy a necessary and beneficial relationship or cause Child serious harm. *Id.* The court further found that Child had a much stronger bond with her foster parents, by whom she could be adopted. *Id.* at 66.

The evidence at the hearing supports these findings. The case manager testified that Father's and Child's interactions were positive and that Child had a positive bond with Father, but that she is more withdrawn and less active with Father than in her foster home and that her needs are met only by her foster parents and not by Father. *Id.* at 11-13, 16, 38, 40, 51. The case manager opined, based on her observations of Child's interactions with Father, that severing Child's relationship with Father would not cause her irreparable harm. *Id.* at 40-41. While Father testified that Child cried and would not let go of him at the end of visits, *id.* at 53-54, that testimony was disputed by the case manager, who testified that Child was not upset leaving Father and did not show any distress in connection with those visits. *Id.* at 40, 51. In

addition, as noted above, the case manager testified that Child is bonded with her foster parents and calls them mother and father and that the foster parents are willing to adopt her. *Id.* at 10-16, 44-45.

We therefore conclude that the trial court did not err or abuse its discretion in finding that statutory grounds for terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b) were established through clear and convincing evidence and affirm its decree terminating Father's parental rights to Child.

Father's remaining issue challenges the trial court's order changing Child's permanency goal to adoption. This issue necessarily fails because we have concluded that the trial court did not err or abuse its discretion in granting the petition to terminate Father's parental rights. Where a decree terminating parental rights to a child is affirmed, the parent's appeal from an order changing the child's permanency goal to adoption is moot. *Interest of A.R.*, ___ A.3d ___, ___, 2023 Pa Super 243, slip op. at 17 (Pa. Super. Nov. 28, 2023); *Interest of A.M.*, 256 A.3d 1263, 1272 (Pa. Super. 2021); *A.H.*, 247 A.3d at 446. We accordingly also affirm the trial court's goal change order. *A.R.*, ___ A.3d at ___, 2023 Pa Super 243, slip op. at 17; *A.M.*, 256 A.3d at 1272-73.

Decree affirmed. Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>4/29/2024</u>