J-S38032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.P.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.S.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1085 WDA 2021 |

Appeal from the Decree Entered August 24, 2021
In the Court of Common Pleas of Bedford County Orphans' Court at
No(s): 2021-00009

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: JANUARY 28, 2022**

Appellant, S.S.K. ("Mother"), appeals from the decree entered August 16, 2021, that terminated her parental rights to her child, A.P.G. ("Child"), born December 27, 2018. We affirm.

The Orphans' Court set forth the procedural history of this case in its 1925(a) opinion, and referred this Court to the notes of testimony from the August 16, 2021 hearing, wherein it set forth its decision and legal reasoning therefore. *See* Orphans' Court 1925(a) Opinion ("TCO"), October 1, 2021, at, at 1-2; N.T., 8/16/21, at 86-101. On April 5, 2021, Child's paternal grandmother ("V.L.L.") filed a Petition to Confirm the Consent to Adopt of her son, the natural father ("S.G."), as well as a Petition for Involuntary

---

* Retired Senior Judge assigned to the Superior Court.

Termination of Parental Rights of Appellant. TCO at 1. Following a hearing on the petitions held on May 26, 2021, an order was entered confirming the consent of S.G, to adopt Child and continuing the hearing for involuntary termination of Mother's parental rights so that proper service could be effectuated on her in the state correctional system. *Id.* The trial court appointed Carol Ann Rose, Esquire to serve as *guardian ad litem* for Child, and at the conclusion of a hearing held on August 16, 2021, the trial court granted V.L.L.'s petition, involuntarily terminating Mother's parental rights to Child. *Id.* at 1-2.

At the hearing, Mother's probation officer from the Bedford County Probation and Parole Office testified that he had been supervising Mother since October 2017, when she received an aggregate of five years' probation following convictions for simple assault and possession with intent to deliver. N.T., 8/16/21, at 8-9. Mother's probation was revoked on three occasions, first in June 2019, when Child was approximately seven months old, and Mother failed to appear and tested positive for amphetamines, methamphetamines and cocaine. *Id.* at 9-10. The probation officer testified that Mother was scheduled to enter a de-tox inpatient program in May, 2019, but failed to do so. *Id.* at 15. Mother was incarcerated for three months following the first revocation; V.L.L. testified that it was at that time that she first began to care for Child. *Id.* at 23. V.L.L. subsequently was granted custody of Child, in late 2019, and Mother and S.G. were granted weekend

supervised visitation rights; V.L.L testified, however, that out of two months, Mother visited Child two times at the most. *Id.* at 27.

Following her release, Mother remained out of custody until late February 2020, when she again tested positive for amphetamines, methamphetamines and morphine. *Id.* at 11. Following the second probation violation, Mother was incarcerated for six months, from February 25, 2020 until August 25, 2020. *Id.* at 92. Upon release, she was at liberty for less than two weeks before again testing positive for drugs. *Id.* She was returned to custody in September 2020, and shortly thereafter was released directly into an in-patient rehabilitation facility, which she left in December 2020 against medical advice and without completing the program. For the next five months, she remained in the Bedford area, living in a car with S.G. and with friends, and using drugs. *Id.* at 93. Mother was picked up on a warrant and returned to custody on March 29, 2021. *Id.*

On September 13, 2021, Mother filed this timely direct appeal.[1]

Mother presents the following issues for our review:

(a) Whether the trial court erred in terminating the parental rights of [Mother]?

(b) Whether the trial court erred in finding by clear and convincing evidence that [Mother] had evidenced a settled purpose of relinquishing her parental rights or that she had failed or refused to perform parental duties for a period in excess of six ((6) months?

_____

[1] Mother filed a concise statement of errors complained of on appeal on September 16, 2021. *See* Pa.R.A.P. 1925(a)(2)(i).

Mother's Brief at 5.

We consider Mother's issues in light of our well-settled standard of review:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence.  Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand.  Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict.  We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

> The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence.  If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (internal quotation marks and some internal citations omitted) (some formatting).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511.  "Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights." *B.J.Z.*, 207 A.3d at 921 (citation omitted).

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence

that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re G.M.S.*, 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted).

## 23 Pa.C.S. § 2511(a)

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), which provides:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). With respect to a parent's performance of parental duties under Section 2511(a)(1), our Supreme Court has explained as follows:

Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions and develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert himself to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*In re Adoption of L.A.K.,* ___ A.3d ___, No. 14 WAP 2021, (Pa. filed December 23, 2021), 2021 WL 6071745 at *7 (internal quotation marks, brackets and internal citations omitted).  Under Section 2511(a)(1), the "most critical period for evaluation is six months immediately preceding the filing of the termination petition."  *Id.*  Mother contends that the Orphans' Court failed to consider the entirety of the evidence and that V.L.L failed to establish by clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing her parental rights or failed to perform parental duties for a period in excess of six months immediately preceding the filing of the petition. She asserts that she, along with S.G., was able to raise Child, together with Mother's other child from a previous relationship, Child's half-sibling, for the first nine months of Child's life;[2] that unbeknownst to V.L.L., she has taken affirmative action to fulfill her parental duties while incarcerated by telephoning S.G., who lives in V.L.L.'s mother's home, in order to speak with Child, and that her release from boot camp may be months away.  Mother's Brief at 12-13.  The record reveals that V.L.L.'s mother provides childcare for Child in her home while V.L.L. is at work.  N.T., 8/16/21, at 37.

After a review of the record, the briefs of the parties, the applicable law, and the well-reasoned decision of the Honorable Brandi J. Hershey, we

---

[2] The record reveals that in fact Mother raised Child from her birth in late December, 2018 until her incarceration on July 31, 2019, a period of seven months.

conclude that Mother's challenge pursuant to Section 2511(a)(1) merits no relief. The Orphans' Court comprehensively discusses and properly disposes of her claims:

> I think the evidence is pretty clear that [Mother] has failed to perform parental duties on behalf of [Child] since [Child] was approximately six months old. Since that time, [V.L.L.] has cared for and performed practically all parental duties on behalf of [Child]. The record has established that, well, prior to and certainly since, and more relevantly since [Child]'s birth, [Mother] has been unfortunately a drug addict.
>
> . . .
>
> The Court would find that based upon the evidence that it would seem as though during those times that [Mother] was not incarcerated, and was otherwise in the community, she took little to no steps to maintain or establish a bond with [Child], to see [Child]. The Court finds that from a reasonableness perspective there were a multitude of things she could have done, but did not. She could have returned to custody court. She could have attempted to exercise those custodial periods which were afforded to her in the prior order, but again, but did not. Instead, unfortunately, it would seem to this Court as though every opportunity she had or every time that she was available in the community, she resumed using drugs.

N.T., 8/16/21, at 91, 93-94. The Orphans' Court considered Mother's testimony with regard to the phone calls she placed to S.G. while incarcerated or in rehab:

> Now the Court did give weight to [Mother]'s testimony as to phone calls placed to [S.G.] while incarcerated from February 25, 2020 until August 25, 2020. And that [Mother] testified that she also placed daily calls to [S.G.] or his grandmother's residence where he was staying once she was re-incarcerated on March 29, 2021. But the Court notes that the telephone calls that [Mother] testified to that she would have placed and spoken to [Child], the Court would note that back in 2020 during that six months jail sentence

- 7 -

[Child] was just a little bit over a year old. So, during that six months was between a year and maybe a year and a half old. So, the Court doesn't find that those phone calls during that period were meaningfully maintaining a place of importance in [Child]'s life. What is more relevant to the Court is what steps, if any, did [Mother] take when she was not incarcerated or in rehab. And again, the Court finds unfortunately that was little to none.

I think the evidence has shown that each time [Mother] was out of jail or out of rehab, she almost immediately resumed using controlled substances and she overall lacked stability. Now, the Court did hear testimony about two letters that were sent in the mail to [Child] in the past month, but the Court places little weight on these as far as our determination to be made here today, inasmuch as this petition has been pending since April of 2021.

N.T., 8/16/21, at 94-95.

Based on the foregoing, we find that the trial court did not err or abuse its discretion in finding that the statutory grounds for terminating Mother's parental rights pursuant to Section 2511(a)(1) were established through clear and convincing evidence. *See B.J.Z.*, 207 A.3d at 921. In reaching this conclusion, we are reminded of the words of our Supreme Court:

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).[3]

_____

[3] In addition, we note that unlike in *L.A.K.,* the record lacks evidence that Mother was able to overcome the obstacle of her substance abuse issues and achieve sobriety in the six-month period prior to the filing of the involuntary termination petition. *See L.A.K.,* 2021 WL 6071745, at *9-13 (affirming
*(Footnote Continued Next Page)*

## 23 Pa.C.S. § 2511(b)

Since a court must engage in a bifurcated process prior to terminating parental rights, ***B.J.Z.***, 207 A.3d at 921, we next consider Section 2511(b), which provides:

> The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis.  While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

---

trial court's conclusion that termination under Section 2511(a)(1) was improper with respect to parent who overcame alcohol abuse and attempted to resume role as parent in six months prior to filing of termination petition despite the preceding three-and-one-half year period where parent was absent from children's lives).

*G.M.S.*, 193 A.3d at 401 (citation and internal brackets omitted) (some formatting).

Here, however, Mother failed to assert any challenge to the termination of her parental rights pursuant to Section 2511(b), in her Concise Statement of Errors Complained of on Appeal, in her statement of questions involved or in the argument portion of her brief. Thus, Mother waived any claim regarding Section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (explaining that this Court will not review an appellant's claim unless it is included in the statement of questions involved and Pa.R.A.P. 1925(b) Concise Statement).

Further, even if Mother had not waived this claim, we would have concluded that no relief was merited. The Orphans' Court carefully examined and directly disposed of such a claim:

> [I]n the instant case the Court heard little to no evidence of any bond that [Child] maintains with [Mother]. The Court finds that essentially a few letters received after the petition was filed, as well as some telephone calls – there's really no evidence that actually established a bond between [M]other and [C]hild. So, I think this Court can fairly, reasonably conclude that there would be little to no effect on [Child] if the parental bond is severed with her natural mother. On the other hand, I did hear uncontested evidence that [Child] is doing very well with [V.L.L.]. [Child] is thriving in this stable, consistent and loving atmosphere provided by [V.L.L.]. So, based on that, I do find that [V.L.L.] has met the burden of proof, again that's clear and convincing evidence as to subsection 2511(b).

N.T., 8/16/21, at 96. The Orphans' Court elicited testimony from V.L.L. regarding the care she provides for Child:

- 10 -

**THE COURT:** And you are her grandmother?

**V.L.L.:** I'm a grandmother.

**THE COURT:** You understand that you're in court today, you're filing a petition asking the Court to terminate [Mother], the natural mother's rights, that you're actually seeking to change the legal relationship you have with [Child]. You understand that?

**V.L.L.:** Yes.

**THE COURT:** Is that something that you intend to proceed with if the Court grants the request?

**V.L.L.:** Absolutely. I do. I can give her a nice home, safe home, a nice environment. I keep her healthy and safe, fed well. She's a product of her environment and she has excelled, and that's because she's loved and she knows it. And she's one place. She's not here and there and she knows where home is. She knows where her living is. And she seems very happy. She sleeps all night long. I haven't had her almost two years and she's only had colds. She has not lost any sleep. She still takes her naps through the day. She takes her naps at pre-school. She is on a schedule, very good schedule. And she sleeps all the night through, every night.

**THE COURT:** You understand that you would be, if the Court grants this petition and you file an adoption petition that you will be her mother in the law?

**V.L.L.:** I am honored to be her mother.

**THE COURT:** Okay.

**V.L.L.:** I would take very good care of her.

**THE COURT:** I realize she's not quite three, but does she understand any of this?

**V.L.L:** All she knows is I'm her me-me. That's all she knows.

**THE COURT:** Okay. I believe you indicated that from your perception, she does not know her mother as a mother?

**V.L.L.:** No, she does not.

N.T., 8/16/21, at 32-34.

Based on the foregoing, we conclude the trial court did not abuse its discretion by terminating Mother's parental rights to Child. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2022