J-A11042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: G.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1658 MDA 2024 |

Appeal from the Decree Entered June 18, 2024
In the Court of Common Pleas of Lycoming County Orphans' Court at
No(s):  2023-6878

BEFORE:   MURRAY, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JUNE 09, 2025**

K.R. ("Mother") appeals from the June 18, 2024 decree granting the petition filed by Appellees, M.S. ("Father") and S.G. ("Stepmother"), to involuntarily terminate the parental rights of Mother to her minor male child, G.S. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), and (b).  After careful review, we affirm.[1]

The orphans' court set forth the relevant findings of fact of this case as follows:

> [Child] was born [in 2019].
>
> The Child's biological mother is [K.R.].  Mother's last known address is in Dauphin County.

---

[*] Former Justice specially assigned to the Superior Court.

[1] It does not appear from the record that Appellees filed a brief in this matter.

The Child's biological father is [M.S.]. [S.G., hereinafter "Stepmother",] is Father's fiancé. . . .

The Child currently resides with [Appellees] at [address redacted], Williamsport, PA 17701.

The Child has been in the sole physical custody of Father since approximately June of 2022.

Mother and Father are subject to a custody order at Lycoming County docket #21-20, 522. The Court took judicial notice of the current Order dated October 10, 2022, which grants the Mother and Father shared legal custody. Father has primary physical custody of the Child and Mother shall have physical custody of the Child at times that she and Father may agree.

The custody order was amended on October 31, 2022, by agreement of Mother and Father to indicate that "Mother may have supervised visitation with the Child at such times as she may obtain a qualified supervisor. Father should not unreasonably withhold such periods of visitation. Mother will supply Father's counsel with a potential supervisor for future visits."

Mother's last in person contact with the Child was in June of 2022.

Mother had one visit in November of 2022, supervised by [Stepmother] and her sister. Mother was staying at the Saving Grace Shelter at the time.

Stepmother testified that Mother was not at the shelter at the time the visit was supposed to begin but Mother was eventually located smoking marijuana in a nearby park and driven back to the shelter to attend the visit.

Mother was very emotional at the end of the visit when she had to say goodbye to the Child.

Mother contacted [Stepmother] in December of 2022 and requested to speak to the Child. However, the

Child was in daycare and not available to speak to Mother.

According to [Stepmother], Mother's last phone call with the Child was December 9, 2022. Mother disputes this and testified that a she was not permitted to speak to the Child on that date.

Mother contacted [Stepmother] in April of 2023 and inquired about when she would be able to speak to the Child. [Stepmother] informed Mother that she had spoken with Father, who indicated Mother was in contempt of the court order and did not have the right to speak to the Child.

Mother's ex-boyfriend attempted to reach out to [Stepmother] via Facebook on behalf of Mother when [Stepmother] would not respond to Mother's phone calls.

Mother has never forwarded a list of proposed supervisors to Father's custody attorney, nor has she tried to arrange supervised visits through Father's attorney as required by the custody order.

Mother has never filed a petition to modify the current custody order.

Mother has several criminal matters, both pending and resolved, involving charges including simple assault, harassment, disorderly conduct, criminal mischief, and possession of a small amount of marijuana.

Mother currently takes medication to address her mental health concerns.

Mother testified that the last time she used methamphetamines was more than six months prior to the hearing.

Mother was unable to be located to be served with a copy of the Petition for Involuntary Termination of Parental Rights for several months.

Mother is not seeking a change in custody but wishes to be assessed for counseling and follow the recommendations so that she may commence supervised visits with the Child.

[Stepmother] has been in the Child's life since he was two years old.

The Child calls [Stepmother] "mom."

Father and [Stepmother] have a child together, who is the half-sibling of the Child in this matter.

[Stepmother] desires to adopt the Child in the event Mother's parental rights are terminated.

Orphans' court opinion, 6/18/24 at 2-4 (numeration omitted).

On July 13, 2023, Appellees filed a petition to involuntarily terminate Mother's parental rights to Child, pursuant to Sections 2511(a)(1), (2), and (b), as a prerequisite to Stepmother adopting Child. Following several delays, the orphans' court ultimately conducted an evidentiary hearing on the termination petition on March 6, 2024. Mother appeared personally at the hearing and was represented by Jeana A. Longo, Esq. ("Attorney Longo"). Father and Stepmother also appeared personally at the hearing and were unrepresented. Child's appointed counsel, Patricia Shipman, Esq., was also present at the hearing.

As noted, on June 18, 2024, the orphans' court entered a decree, finding that Appellees satisfied their burden of proving by clear and convincing evidence that termination of Mother's parental rights to Child was warranted under Section 2511(a)(1), and that termination and allowing the adoption to

proceed was in the best interest of Child. Orphans' court opinion, 6/18/24 at 10; **see also** Decree, 6/18/24 at 1.

On July 19, 2024, Attorney Longo filed a notice of appeal from the June 18, 2024 termination decree on Mother's behalf. On October 8, 2024, this Court entered a show cause order directing Attorney Longo to respond as to why this appeal should not be quashed as untimely. On October 9, 2024, Attorney Longo responded by filing in this Court, an "Application to Appeal **Nunc Pro Tunc** and to not Quash as Untimely," acknowledging that the July 19, 2024 notice of appeal was untimely and requesting permission to appeal **nunc pro tunc**, due to critical understaffing issues at the Lycoming County Public Defender's Office. On October 30, 2024, this Court quashed the appeal as untimely, denied Attorney Longo's application, and directed her to file a petition with the trial court to appeal **nunc pro tunc** from the June 18, 2024 termination decree. On October 31, 2024, Attorney Longo compiled with this Court's directive and filed in the trial court a "Petition to Appeal **Nunc Pro Tunc**," which was subsequently granted on November 5, 2024. Attorney Longo filed the instant timely appeal on Mother's behalf on November 7, 2024, within 30 days of the order granting **nunc pro tunc** relief.[2, 3]

---

[2] Mother and the orphans' court have complied with Pa.R.A.P. 1925.

[3] A second, identical notice of appeal from the June 18, 2024 termination order was filed by Appellant on November 7, 2024. **See** No. 1657 MDA 2024. On December 5, 2024, the appeal at No. 1657 MDA 2024 was dismissed as duplicative.

Mother raises the following issue for our review:

> I. Whether the [orphans'] court erred in terminating Mother's parental rights because Mother did not demonstrate a settled purpose to relinquish claim to [Child?]

Mother's brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

- 6 -

> evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa.Super. 2019) (citation omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). This Court has defined "clear and convincing evidence" as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, termination of Mother's parental rights to Child was sought pursuant to Sections 2511(a)(1), (2), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months

- 7 -

immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2) and (b). We need only agree with the orphans'

court as to any one subsection of Section 2511(a), as well as Section 2511(b),

to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

We will begin our analysis by reviewing the orphans' court's findings with regard to Section 2511(a)(1). Mother contends that Appellees failed to prove by clear and convincing evidence that she demonstrated a settled purpose of relinquishing her parental claim to Child and has failed to perform her parental duties for a period of at least six months prior to their filing of the termination petition. Mother's brief at 10-13.

An inquiry under subsection 2511(a)(1) focusses on the conduct of the parent for at least a six-month period prior to the filing of the petition. "A court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition." *In re I.J.*, 972 A.2d 5, 10 (Pa.Super. 2009).

> Though we do not adhere to any strict definition of parental duty, a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation. Foremost, it is a positive duty requiring affirmative performance. [C]ommunication and association are essential to the performance of parental duty[.] [P]arental duty requires that a parent exert himself to take and maintain a place of importance in the child's life. A parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship, or his rights may be forfeited. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Adoption of C.M.*, 255 A.3d 343, 364 (Pa. 2021) (internal citations and quotation marks omitted).

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (internal citations omitted), *appeal denied*, 872 A.2d 1200 (Pa. 2005).

Upon review, we find that Appellees have met their burden by clear and convincing evidence that the involuntary termination of Mother's parental rights to Child was warranted under Section 2511(a)(1). The record demonstrates that Mother evidenced a settled purpose of relinquishing her parental claim to Child and has failed to perform her parental duties for a period of at least six months prior to their filing of the termination petition on July 13, 2023. *See* 23 Pa.C.S.A. § 2511(a)(1). Mother's last in-person contact with Child occurred on November 2, 2022, during a short, supervised visit at the Saving Grace shelter where she was temporarily residing. Notes of testimony, 3/6/24 at 7, 10, 42. Child has been in the custody of Father and Stepmother since June 2022, and since that time, Mother has failed to perform any parental duties for Child, including feeding, bathing, and providing a secure residence for Child. *Id.* at 42-43, 84-85. The record further demonstrates that Mother has never provided Child with any cards or

gifts for his birthday or holidays, nor has she attended any medical appointments for Child. *Id.* at 27.

The existing custody order between Mother and Father grants Mother periods of physical custody with Child as agreed upon by the parties, subject to the requirement that Mother's periods of custody be supervised. *Id.* at 21-22, 74-75. The record reflects that Mother has never forwarded a list of proposed supervisors to Father's custody counsel, nor has she tried to arrange supervised visits with Child through Father's counsel, as required by the custody order. *Id.* at 12, 22, 86-87, 102-103. Mother has also never filed a petition to modify the parties' current custody arrangement nor attempted to utilize the court system to establish specific supervisors. *Id.* at 75, 87, 102-103.

Contrary to her contention, the record clearly demonstrates that Mother has evidenced a settled purpose of relinquishing her parental claim to Child and has failed to perform her parental duties for a period of at least six months prior to their filing of the termination petition. As such, Mother's claim with respect to Section 2511(a)(1) fails.

We now turn to whether termination of Mother's parental rights to Child was warranted under Section 2511(b). Pursuant to Section 2511(b), trial courts are required to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Regarding the "emotional needs and welfare" of the child, our

precedent has interpreted it to include "intangibles such as love, comfort, security, and stability." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citation and quotation marks omitted).

Our Supreme Court in **In re E.M.**, 620 A.2d 481, 484 (Pa. 1993), first recognized that the "emotional needs and welfare" analysis under Section 2511(b) should include, in part, the child's bond with his or her parent. In doing so, trial courts must examine the effect on the child of severing such a bond, and this includes "a determination of whether the bond is necessary and beneficial to the child, **i.e.**, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." **In the Interest of K.T.**, 296 A.3d 1085, 1113 (Pa. 2023). The **K.T.** Court recently explained:

> Severance of a necessary and beneficial bond would predictably cause more than the adverse impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause extreme emotional consequences or significant, irreparable harm. **See E.M.**, 620 A.2d at 484 ("a beneficial bonding could exist between a parent and child, such that, if the bond were broken, the child could suffer extreme emotional consequences").

**K.T.**, 296 A.3d at 1109-1110 (some citations and internal quotation marks omitted).

As such, the **K.T.** Court distinguished "extreme emotional consequences" from an "adverse impact" to the child when parental rights are terminated. **Id.** at 1111. Specifically, the Court cautioned that a trial court

"must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." *Id.* at 1114. The Court concluded, "to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." *Id.*

Moreover, in reiterating that the parental bond is only one part of the analysis, the *K.T.* Court held that the "Section 2511(b) inquiry must also include consideration . . . [of] certain evidence **if it is present in the record**." *Id.* at 1113, n.28 (emphasis in original). The specific evidence at issue in *K.T.* related to the child's need for permanency and the length of time she had spent in foster care; the pre-adoptive nature of her foster home and the child's bond with foster parents; and whether the foster home met the child's developmental, physical, and emotional needs. *Id.* at 1112. The Court emphasized, however, that these foregoing factors were not an exhaustive list for consideration under all Section 2511(b) analyses. *Id.* at 1113, n.28. Rather, the *K.T.* Court found, as noted above, that the particular facts of each case determine the factors to be considered.

Further, the Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. For instance, if relevant in a case,

a trial court "can equally emphasize the safety needs of the child" in its analysis under Section 2511(b). *See In re M.M.*, 106 A.3d 114, 118 (Pa.Super. 2014).

Instantly, the orphans' court conducted a comprehensive evaluation of what would be in Child's best interests under Section 2511(b), reasoning as follows:

> [G]iven the age of the Child and the length of time he has been apart from Mother, the Court cannot conclude that through the eyes of the Child there is a bond with Mother. The Child is four and a half years old and has only seen Mother one time for approximately ninety minutes since June of 2022. The Child has no relationship with Mother. The Child refers to [Stepmother] as "Mom." Given the Child's age and the extremely limited amount of time he has spent with Mother, termination of Mother's rights would not destroy an existing necessary and beneficial relationship, as there currently exists no parent-child bond. Child is clearly bonded with the Father and [Stepmother], who have performed all parental duties for him since June of 2022. [Stepmother] has stepped in and provided the love and stability the Child deserves and has assumed the parental responsibilities that Mother has failed to perform and has evidenced a settled purpose of relinquishing.

Orphans' court opinion, 6/18/24 at 9.

Following our careful review, we agree with the orphans' court that Appellees have established by clear and convincing evidence that termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of Child. Our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court

- 14 -

where, as here, they are supported by the record. **See *In re T.S.M.***, 71 A.3d at 267.

Based on the foregoing, we discern no abuse of discretion on the part of the orphans' court in granting Appellees' petition to involuntarily terminate Mother's parental rights to Child. Accordingly, we affirm the June 18, 2024 decree of the orphans' court.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/09/2025