J-S18042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.J.I., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.J.I., SR., FATHER, AND B.L.N.I., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 116 WDA 2025 |

Appeal from the Decree Entered January 2, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
2023-00060A

| | | |
|---|---|---|
| IN THE INTEREST OF: P.A.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.J.I., SR., FATHER AND B.L.N.I., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 117 WDA 2025 |

Appeal from the Decree Entered January 2, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
2023-00061A

| | | |
|---|---|---|
| IN THE INTEREST OF:  L.L.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  B.J.I., SR., FATHER AND B.L.N.I., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 118 WDA 2025 |

Appeal from the Decree Entered January 2, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
2023-00062A

| | | |
|---|---|---|
| IN THE INTEREST OF:  B.G.I., A/K/A N.I., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

```
                                    :
                                    :
                                    :
APPEAL OF: B.J.I., SR., FATHER AND  :
B.L.N.I., MOTHER                    :
                                    :
                                    :
                                    :   No. 119 WDA 2025
```

Appeal from the Decree Entered January 2, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
2023-00063A

```
IN THE INTEREST OF: N.J.I., A       :   IN THE SUPERIOR COURT OF
MINOR                               :        PENNSYLVANIA
                                    :
                                    :
APPEAL OF: B.J.I., SR., FATHER AND  :
B.L.N.I., MOTHER                    :
                                    :
                                    :
                                    :   No. 120 WDA 2025
```

Appeal from the Decree Entered January 2, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
2023-00064A

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED:  July 3, 2025**

In these consolidated joint appeals, B.J.L., Sr. ("Father") and B.L.N.I. ("Mother") (collectively, "Parents"), appeal from the January 2, 2025 decrees granting the petitions filed by Appellee, the Butler County Children and Youth Services ("CYS"), to involuntarily terminate Parents' parental rights to their five minor children, B.J.I., Jr. (born in March 2013), P.I. (born in February

---

[*] Former Justice specially assigned to the Superior Court.

- 2 -

2015), L.L.I. (born in July 2017), N.I.I. (born in July 2019), and N.J.I. (born in March 2022) (collectively, "Children"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). After careful review, we affirm.

The orphans' court summarized the extensive factual findings and procedural history of this case as follows:

> On July 1, 2019, Mother gave birth in her home to N.I.I. The newborn was subsequently transferred to Magee Women's Hospital in Pittsburgh. On the following day, [CYS] received information the newborn tested positive for cocaine and methadone. [CYS] Caseworkers and two (2) Butler County Adult Probation Officers conducted a home inspection. They discovered there was no electricity serving the residence. Mother and Father admitted using cocaine three (3) days prior to Mother's delivery of N.I.I. The Probation Officers also found various medications, a loaded gun, crushed up pills, and drug paraphernalia, all within reach of the Parties' other children. Mother and Father were incarcerated in the Butler County Prison for violating the terms of their respective probations terms by possessing the loaded gun. The Detention Order issued on July 3, 2019, followed the same day by a Shelter Care hearing. Upon the recommendation by the Juvenile Court Hearing Officer, the Court directed the Children be detained to protect their health, safety, and welfare. Dependency petitions were also filed for the Child's three (3) older siblings. The newborn, N.J.I., was hospitalized from July 1 through July 19, 2019, due to cocaine addiction.
>
> The Adjudication hearing was scheduled on July 18, 2019, and, due to the unavailability of Mother's court-appointed attorney, continued and rescheduled on July 24, 2019[], at which time an order was entered adjudicating the four (4) Children dependent. At this hearing, Mother and Father admitted using illegal drugs. The Children placed with their Paternal Aunt [] whose boyfriend, "Richard," had a felony conviction from 20 years prior. Because of Richard's criminal

record, [CYS] was unable to obtain certification of Paternal Aunt's home, as an appropriate placement option. However, the Children remained placed in her home because [CYS] believed it was in their best interests ….

Mother and Father remained incarcerated at the time of the Disposition hearing held on August 22, 2019. The Court entered an order maintaining the Children's placement with the Paternal Aunt. The Disposition Order further directed Mother and Father to contact [CYS] immediately upon release from incarceration, to participate in any parenting programs available through the Butler County Prison, and to maintain contact with their children by sending cards and letters to [CYS's] assigned caseworker, who would forward all correspondence to the four (4) children.

The initial Permanency Review Hearing ("PRH") was scheduled on September 4, 2019, but continued by consent order, due to a conflict of interest involving Father's court-appointed attorney. Upon motion by [CYS], the Court granted its request for an early PRH based upon certain safety concerns existing in Paternal Aunt's home. This hearing was held before the Hearing Officer on October 9, 2019.

At the early PRH, Mother was no longer incarcerated. Father remained in the Butler County Prison. The Court determined, upon recommendation by the Hearing Officer, that both Parents were minimally complying with the Children's Permanency Plans ("CPP"); Mother's progress toward alleviating the circumstance necessitating the original placement was minimal, since released from incarceration, and Father made no progress. The placement goal was reunification of the Children with a parent or guardian with adoption as the concurrent plan.

A PRH was held before the Hearing Officer approximately a month later on November 14, 2019. Despite being incarcerated, Father demonstrated moderate compliance with the provisions under the Permanency Plan. However, he was not making

- 4 -

progress toward relieving the dependency circumstances, although Father completed a drug and alcohol evaluation recommending inpatient treatment. Mother was progressing toward certain goals. She consistently tested negative for illegal substances, obtained employment, obtained housing in an addiction rehabilitation home, and attended appropriate treatment. Therapeutic visitations with Mother were recommended, due to the Children's behavioral concerns. The permanency goal remained reunification with Mother and Father.

At the PRH held February 6, 2020, the Hearing Officer determined both parents were substantially complying with the CPP's. Father was no longer incarcerated. Mother and Father obtained housing under a one (1) year lease. They consistently attended therapeutic visitation with the Children. However, neither parent was involved with mental health services. Mother's progress remained moderate. She cooperated with drug screening, which revealed her ongoing use of marijuana. Mother successfully completed intensive outpatient treatment at the Gaiser Center and transferred to the facility's stepped-down outpatient program. However, Mother's attendance in outpatient was poor. On January 23, 2020, she tested positive for amphetamines, no longer worked, and was not receiving mental health services.

Father was achieving moderate progress toward attaining the goals outlined by [CYS]. He attended inpatient drug and alcohol treatment at Conewago Indiana, and underwent a drug and alcohol evaluation at the Gaiser Center, which recommended ***intensive*** outpatient treatment. Due to scheduling issues, Father [] decided to participate in intensive outpatient treatment at Butler Memorial. However, Father tested positive for THC and amphetamines on two (2) occasions. The Children's continued placement with the Paternal Aunt was found to be in their best interests.

The next PRH scheduled on April 30, 2020 was continued to July 23, 2020, due to circumstances

surrounding the COVID pandemic. Upon the Hearing Officer's recommendation, the Court maintained Children's placement with Paternal Aunt. Mother and Father were making minimal progress toward alleviating the circumstance which necessitated the original placement. They were inconsistent participating with the services being offered, including drug screening. Of the 45 scheduled drug screens for Mother and Father from January 2, 2020 to July 16, 2020, both Parents tested negative only four (4) times in January of 2020. They had positive results for using THC and other substances on ten (10) occasions. Mother and Father failed to appear for drug screening on 27 occasions, during this roughly six-and one-half-month period.

On April 25, 2020, the Butler City Police and emergency medical personnel responded to the home of Mother and Father for a reported drug overdose. Upon arrival, the EMS personnel found Mother lying unresponsive inside the doorway of the home. She was successfully administered a dose of Naloxone and Mother became responsive. In early July 2020, Mother and Father were facing new criminal charges arising from separate incidents involving trespassing and theft at Walmart. Therapeutic visitation with the Children occurred at Family Pathways, but Mother and Father attended only 24 of 49 scheduled sessions from January 2 through July 16, 2020. During these visits, they were dismissive and argumentative with the Family Pathways therapists, such as using intimidating language toward the Children, including threats to remove food, shelter, and security. Mother and Father resisted improving their parenting style.

By Order dated October 14, 2020 upon the Hearing Officer's Recommendation following another PRH, the Court continued placement of the Children. Mother and Father were discharged from therapeutic visitation services by Family Pathways on September 10, 2020, for numerous concerns regarding their tone of voice, angry and threatening demeanor, name-calling, and taking the Children away from the visitation supervisor to speak privately with them.

Supervised visitation resumed September 22, 2020 with another provider, Justice Works. Additional findings at the PRH include Mother and Father failing to pay rent and utilities. Both Parents were involved with service providers, although they had inconsistent drug screens. Mother and Father obtained prescription medical marijuana cards and continued testing positive for THC. The criminal charges arising from the incidents in early July 2020 remained pending and Father continued to be on probation. Placement and physical custody of the Children remained with Paternal Aunt. Visitation was modified to in-home supervision twice a week for two (2) hours each session. Both Parents were moderately complying with the Permanency Plan and were making moderate progress toward alleviating the circumstances necessitating the original placement.

At the next PRH held December 3, 2020, the Hearing Officer issued detailed Supplemental Findings in support of the recommendation to return the Children to Mother and Father. The visitation provider, Justice Works, observed no safety concerns regarding the care Mother and Father were providing to their children and the Parents were making substantial progress, both toward alleviating the circumstances which necessitated the original placement and complying with [CYS'] Permanency Plan. Both Parents complied with drug and alcohol treatment and participated in mental health counseling. Their delinquent rent was nearly current. Mother obtained employment, while Father was receiving monthly Social Security Disability income. Over [CYS'] objection, the Hearing Officer's Recommendation was adopted by Order of Court on December 3, 2020, directing the immediate return of the Children to Mother and Father. A PRH (Non-Placement) was scheduled on January 21, 2021.

At this PRH (Non-Placement), the Hearing Officer determined Mother was neither attending any drug and alcohol sessions at the Care Center nor participating in mental health counseling, since the Children were returned home. She missed many in-

- 7 -

home drug screens, but tested negative for those screens she took. Father was discharged January 12, 2021 from drug and alcohol treatment because he was not attending. He was at risk of being discharged from mental health services, having only attended one (1) session. Mother and Father faced eviction from their home, due to non-payment of rent. They refused assistance from Justice Works to find suitable housing. The Hearing Officer's Recommendation dated January 21, 2021, as adopted by Order issued February 4, 2021, states:

> Although there are no current safety concerns in the home, there are numerous concerns regarding the Parents' cooperating with services and the stability of their housing. In addition, there are concerns regarding the children's behaviors and not attending school. Although the concerns do not justify removal of the children at this time, the matter will continue to remain open with the Court and [CYS] until such time as it can be determined that the parents have addressed the housing issue, have addressed their financial issues, have continued with drug and alcohol and mental health treatment, have been consistent with drug screens, have addressed the children's behaviors, are getting the children to school on time every day, and are cooperative with [CYS] and Justice Works.

The next PRH (Non-Placement) scheduled March 3, 2021 was rescheduled to March 18, 2021.

On March 18, 2021, the Hearing Officer found Mother and Father were discharged from both drug and alcohol treatment and mental health counseling for failure to attend. Housing was a serious concern. A landlord-tenant civil proceeding was scheduled on April 7, 2021. There were difficulties with the school-aged children's attendance. Despite these concerns, the Children remained in the home with Justice Works providing the services directed by [CYS].

At the July 1, 2021 PRH, the Hearing Officer recommended terminating court supervision of the Children because Mother and Father obtained adequate housing, rent was current, and they consistently had negative drug screens. The Children's school attendance was improving, as well.

In January 2022, the Agency received a report Mother and Father may be living with the Children at a local motel. There were also concerns about a possible physical alternation between Mother and Father. [CYS] Caseworker[] Amy McGill[] confirmed the family was living in a motel and searching for appropriate housing: Ms. McGill testified Children's needs were being met, despite living in the motel, and Mother and Father were seeking housing support from the community. The youngest of the five (5) siblings was born March 10, 2022. A week later on March 17, 2022, there was a CPS report one (1) of the Children sustained an eye injury. Mother and Father reported the oldest Child fell off his bike. Upon investigation, [CYS] determined the CPS report unfounded.

Later in 2022, there was another CPS report concerning N.I. losing too much weight and another younger sibling, L.I., presenting at the local Head Start childcare facility with a Suboxone wrapper in her backpack. Mother and Father said N.I.'s stomach illness and vomiting were the cause of his weight loss. After investigating [CYS] concluded the Suboxone wrapper incident was valid, despite Mother and Father asserting they utilized a lockbox in their home for safekeeping medications.

On July 11, 2022, [CYS], again, became involved with the family when the Adams Township (Butler County) Police Department contacted [CYS] concerning [] three (3) of the Children left unattended in the residence. The Officers determined these children were left alone for approximately two (2) hours without any adult or appropriate caregiver present. Adams Township Officer Jose Ceron testified it took Mother and Father over one (1) hour for them to return home, after a child, B.I. called his parents to

inform them the police were at the residence. However, when he was on the phone with Mother and Father, they told their son they were, "...turning on the street now." Officer Ceron smelled marijuana within the home, along with finding suspected marijuana found within reach of the Children. The police took Father into custody, while [CYS] placed the Children with the Maternal Great-Grandmother[.] Mother and Father were charged with felony endangering the welfare of children. A search warrant was issued and, upon searching the vehicle after it arrived home, the police discovered several prescription bottles with one (1) bottle containing evidence of crack cocaine. The investigating officers also determined there was inadequate food in the home.

On the following day, an order detaining the Children was entered, due to these safety concerns, including, but not limited to the unavailability of Mother and Father. On July 13, 2022, [CYS] filed the Petition for Dependency and application for shelter care. Sufficient evidence was presented to establish a return of the Children to their home with Mother and Father was unsafe. [A h]earing on [CYS's] Petition was scheduled on July 27, 2022. Prior to the hearing, [CYS] filed an Amended Dependency Petition, addressing additional concerns, such as the older Children's poor school attendance and insufficient health care.

Prior to the July 11, 2022 incident involving the police, one (1) of the Children, N.I., was having breathing difficulties and weight gain issues. Mother and Father were advised to take him to Children's Hospital of Pittsburgh, which they failed to do. The following day, N.I. was transported by ambulance and admitted to Children's Hospital. Mother and Father later signed out the boy from the hospital against medical advice. The health issues involving N.I. later resolved. However, all of the Children missed various health care appointments. For example, the [CYS] assigned Caseworker attempted to have authorizations signed by Mother and Father to release dental care

- 10 -

information. Mother informed the Caseworker there was no identified dental provider for the Children.

Mother and Father arrived approximately 20-25 minutes late to the Detention hearing held on July 27, 2022. Counsel for Mother and Father requested a full evidentiary hearing regarding the dependency allegations. Due to the Hearing Officer's schedule, there was insufficient time to conduct a lengthy hearing, so it was rescheduled to August 12, 2022. However, some testimony was received on July 27, 2022, regarding [CYS's] request to modify the Children's placement. [CYS] alleged Mother, who was required to be supervised with the Children, was unsupervised, when she took the Children to a medical appointment. There were additional safety concerns how the Children and Mother were transported to the appointment. Placement of the Children was modified by removing them from Maternal Great-Grandmother's care and placing the Children into foster care.

At the August 17, 2022, Adjudication hearing, the evidence established Father faced three (3) felony child endangering charges and five (5) misdemeanors arising from the July 11, 2022 incident. Soon thereafter, he was also charged for a somewhat related incident occurring on August 8, 2022, comprised of two (2) felonies and two (2) misdemeanors, where Father threatened a neighbor near the apartment rented by the Mother and Father. Mother was charged with two (2) felony endangering charges, three (3) misdemeanors, and a summary offense arising from the incident on July 11, 2022. Father was incarcerated in the Butler County Prison with bail set at $100,000.00. At the Disposition hearing held September 14, 2022, the continued placement of the Children was ordered with Mother entitled to supervised visitation twice a week, since she was not incarcerated. Father was granted visitation, contingent upon his release from jail. … On or about November 1, 2022, the Agency requested a placement change to allow all five (5) children to remain together in foster care.

At the December 14, 2022 PRH, it was determined continued placement of the Children was in their best interests. Father remained incarcerated. On the other hand, Mother was making moderate progress toward alleviating the circumstances necessitating the original placement. She maintained a residence in the Adams Ridge development located in southern Butler County and was able to drive a suitable vehicle for transporting the Children. Mother was also working fulltime. An early PRH was scheduled for February 2, 2023.

. . . .

At the March 8, 2023, PRH, the evidence supported continuing placement of the Children in Foster care. Father remained incarcerated. Mother was deemed to be substantially complying with the goals outlined by [CYS]. Another review hearing was scheduled on March 24, 2023.

The [CYS] Caseworker conducted a home visit on March 15, 2023 and was informed by one (1) of the Children that an individual known as "Uncle Miz" had "grabbed up on him." At the time, Mother had unsupervised custody of the Children at Maternal Grandmother's home every weekend. Mother claimed she does not allow anyone around the Children. Upon further inquiry, [CYS] discovered "Uncle Miz" … was under close surveillance by Federal Marshalls. On or about April 12, 2023, [CYS] petitioned for an early review hearing, due to concerns with some adult being around the Children, during Mother's visitation.

At the early PRH held April 27, 2023, the evidence indicated Mother was exercising poor judgment with certain adults she allowed to be in contact with the Children. Mother was prohibited to have anyone be in her home when having overnight visitation of the Children, unless [CYS] gave approval after it conducted criminal background checks. The next PRH was scheduled on June 28, 2023.

On June 7, 2023, one (1) of the Children requested that, "Terrance[] [Clowney] wouldn't come around anymore." [CYS] determined Federal Marshalls were also searching for Mr. Clowney because a warrant was issued for his arrest. Mr. Clowney frequented Mother's residence on several occasions. He was apprehended to face drug-related charges.

Later in June 2023, the Butler County Drug Task Force arrested and charged Mother with felony drug charges involving fentanyl distribution, as well as a misdemeanor drug paraphernalia charge. Maternal Great-Grandmother, who previously served as kinship placement for the Children was present during some of Mother's drug dealing. A search warrant of Mother's cellphone further revealed Maternal Great-Grandmother was fully aware of Mother's illegal drug activity. The search of Mother's cellphone also revealed an incident of a third-party trying to buy a bundle of fentanyl from Mother on June 28, 2023. Mother['s] text message reply stated, "give me a second I have my kids."

At the PRH held July 19, 2023, Father remained incarcerated. Mother tested positive for cocaine and continued her association with known drug-related persons. Mother underwent ongoing drug screens twice per week and hair follicle testing. Mother's court-appointed attorney requested a continuance of the October 11, 2023, PRH, because she had a previously scheduled vacation, but then fell ill with COVID-19. An Order granting the continuance request was entered and the PRH was re-rescheduled to October 26, 2023.

Father was still incarcerated at the time of the October 26, 2023[] PRH. Mother was minimally complying with the Children's Permanency Plans. She was not communicating with [CYS] and also had outstanding criminal warrants. The Children remained placed in Foster care.

Orphans' court opinion, 1/2/25 at 1-13 (some footnotes omitted).

On October 25, 2023, CYS filed petitions to involuntarily terminate Parents' parental rights to the Children, pursuant to Sections §§ 2511(a)(1), (2), (5), (8) and (b). Thereafter, on February 2, 2024, CYS filed a motion for goal change from reunification to adoption. The orphans' court conducted an evidentiary hearing on the termination petitions on April 24, 25, and 26, 2024. Parents were both incarcerated at the time of the termination proceedings but were represented by counsel. The Children's court-appointed **guardian ad litem**, Susan B. Lope, Esq., was also present at the termination hearing.

As noted, on January 2, 2025, the orphans' court entered decrees, finding that CYS satisfied its burden of proving by clear and convincing evidence that the termination of Parents' parental rights to the Children was warranted under Sections 2511(a)(1), (2), (5) and (8), and that termination was in the best interest of the Children. Orphans' court opinion, 1/2/25 at 33; **see also** Decrees, 1/2/25 at 1. Parents filed timely notices of appeal on January 29, 2025.[1] Parents and the orphans' court have complied with Pa.R.A.P. 1925.

---

[1] We note that although each notice of appeal states that Parents are appealing from the "Order" entered in each case, each notice of appeal actually appears to relate to two decrees that separately terminated Mother's and Father's parental rights to each child. The joint appeals filed by Father and Mother at Nos. 116 WDA 2025, 117 WDA 2025, 118 WDA 2025, 119 WDA 2025, and 120 WDA 2025 were consolidated by **per curiam** order of this Court on February 20, 2025.

Parents raise the following issues for our review:

  I.   Did the [orphans' court] commit an abuse of discretion in finding by clear and convincing evidence that both parents, who are married to each other, displayed conduct continuing for a period of at least six (6) months immediately preceding the filing of the Petition for Involuntary Termination of Parental Rights which evidenced a settled purpose of relinquishing their parental claim to the child when the testimony at trial was that when Father was permitted visits he attended them faithfully, attempted to send the children cards and letters, was involved in numerous groups to assist him in meeting the goals in the child's permanency plans, the children were bonded to him and was set to be released from prison in June of 2024 and off supervised release by August 2025[?]

  II.   Did the [orphans' court] commit an abuse of discretion in finding that there was clear and convincing evidence the natural parents could not or would not remedy the conditions that led to removal of the child within a reasonable period of time and that the services available are not likely to remedy the conditions which led to placement when the parents had actively engaged services when able and Father had addressed the issues that caused his incarceration and his release from incarceration was eminent[?]

  III.   Did the [orphans' court] commit an abuse of discretion in failing to address the bond between the children and their parents and the impact of the termination of [P]arents' rights on the children[?]

Parents' brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

> concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa.Super. 2019) (citation omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). This Court has defined "clear and convincing evidence" as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, termination of Parents' parental rights to the Children was sought pursuant to Sections 2511(a)(1), (2), (5), (8) and (b), which provide as follows:

**§ 2511.  Grounds for involuntary termination**

**(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

   (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental

> rights would best serve the needs
> and welfare of the child.
>
> **. . . .**
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Instantly, Parents contend that CYS failed to prove by clear and convincing evidence that they demonstrated a settled purpose of relinquishing their parental claim to the Children and has failed to perform their parental duties for a period of at least six months prior to their filing of the termination petition. Parents' brief at 15-24. Parents further contend that that the orphans' court erred in its evaluation under Section 2511(b). *Id.* at 25-30.

An inquiry under subsection 2511(a)(1) focusses on the conduct of the parent for at least a six-month period prior to the filing of the petition. "A

court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition." *In re I.J.*, 972 A.2d 5, 10 (Pa.Super. 2009).

> Though we do not adhere to any strict definition of parental duty, a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation. Foremost, it is a positive duty requiring affirmative performance. [C]ommunication and association are essential to the performance of parental duty[.] [P]arental duty requires that a parent exert himself to take and maintain a place of importance in the child's life. A parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship, or his rights may be forfeited. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Adoption of C.M.*, 255 A.3d 343, 364 (Pa. 2021) (internal citations and quotation marks omitted).

Likewise, under Section 2511(b), trial courts are required to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The "emotional needs and welfare" analysis under Section 2511(b) should include, in part, a child's bond with his or her parent. In doing so, trial courts must examine the effect on the child of severing such a bond, and this includes "a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and

emotional needs and welfare." ***In the Interest of K.T.***, 296 A.3d 1085, 1113 (Pa. 2023).

Following a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned January 2, 2025 opinion of the orphans' court, it is our determination that Parents' claims warrant no relief. The orphans' court comprehensively discussed each of Parents' claims on appeal and concluded that they were without merit. We find that the conclusions of the orphans' court are supported by competent evidence and are clearly free of legal error.

Specifically, we agree with the orphans' court's determination that CYS established by clear and convincing evidence that the involuntary termination of Mother's and Father's parental rights was warranted under Sections 2511(a)(1). ***See*** Orphans' court opinion, 1/2/25 at 14-22, 24-26. We further agree with the orphans' court's rationale that the termination of Parents' parental rights would best serve the developmental, physical and emotional needs and welfare of Children. ***See id.*** at 31-33. Contrary to Parents' claim, it is clear that the orphans' court considered the bond the Children had with Parents, noting that "[t]he Children's need for safety, stability, and permanency clearly outweigh any potential harm to the Children from the severing their bond with Mother and Father." ***Id.*** at 32.

Our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court where, as here, they are

supported by the record. ***See In re T.S.M.***, 71 A.3d at 267. Based on the foregoing, we find that the orphans' court did not abuse its discretion in granting CYS's petition to involuntarily terminate Parents' parental rights to the Children. Accordingly, we adopt the comprehensive and well-reasoned January 2, 2025 opinion of the Honorable William C. Robinson, Jr. as our own for purposes of this appellate review.

Decrees affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/3/2025