J-S06031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.E.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Z.K.B., SR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1314 WDA 2025 |

Appeal from the Decree Entered March 31, 2025
In the Court of Common Pleas of Venango County Orphans' Court at
No(s):  O.C.D. No. 34-2024

BEFORE:   KUNSELMAN, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: March 31, 2026**

Z.K.B., Sr. ("Father") appeals from the orphans' court's March 31, 2025 decree granting the petition filed by Appellees, A.B.M. ("Mother") and her husband, J.E.M ("Stepfather"), to involuntarily terminate Father's parental rights to his minor nine-year-old son, Z.E.B. ("Child"), pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b).  After careful review, we affirm.

The orphans' court summarized the extensive findings of fact of this case as follows:

> [Appellees] reside [in … Franklin, Venango County, Pennsylvania 16323].
>
> [Appellees] are gainfully employed and are financially able to support [Child].
>
> [Child] is in the sole custody of [Appellees].

_____

[*] Former Justice specially assigned to the Superior Court.

[Child] has one (1) sibling, who is the child of [Appellees].

[Child] is male.

[Child] is biracial.

[Child] of Methodist religious affiliation.

[Mother] was unmarried at the time of [Child's] birth.

[Father] is listed on [Child's] birth certificate.

[Father] has not been involved in [Child's] life since [his] birth.

[Mother's] last in-person interaction with [Father] was six (6) years prior to this action.

[Mother's] last in-person interaction with [Father] occurred when [Father] burglarized [Mother's] home.

[Child] does not recognize [Father].

[Child] calls his stepfather "dad."

[Stepfather] has been in [Child's] life since [he] was two (2) years old.

[Child] is unaware of [Father's] identity and circumstances.

[Mother] and [Father] do not communicate.

[Father] has not asked for an update on [Child] in at least six (6) years.

[Mother] has blocked [Father] from her cell phone.

[Mother] has communication abilities with [Father's] sister, [A.B.].

[Father] is married to [H.B.].

[Mother] and [H.B.] are first cousins.

[Mother] and [H.B.] share their maternal grandmother [H.W.].

The children of Hope and [Father] have resided with the grandmother.

[Father] did not attempt to contact [Mother] through the mutual grandmother.

[Mother] has changed her residence during [Child's] life.

[Mother] did not inform [Father] of the change in residence.

[Mother's] recent relocation was in the same county and school district.

[Mother] and [Father] had not communicated in several years prior to [Mother's] change in residence and [Mother] did not reasonably believe [Father] wanted to know her location.

[Mother] maintains a relationship with the grandmother.

[Father] has not made reasonable attempts to locate [Mother] or [Child].

[Father] has been incarcerated since October 2021.

[Father] did not make efforts during his incarceration to locate [Mother] for the purpose of establishing a connection with [Child] or performing parental duties.

[Father] did not make efforts prior to his incarceration to locate [Mother] for the purpose of establishing a connection with [Child] or performing parental duties.

[Mother] has never received a birthday/holiday card or gift from [Father] to give to [Child] on his behalf.

[Father] does not financially support [Child].

[Father] gave [Mother] $500.00 in [Child's] first year of life for the purpose of support.

[Father] has not performed parental duties on behalf of [Child] before his incarceration.

[Father] has not attempted to establish any bond or relationship with [Child], before or during his incarceration.

[Father] has never had custody of [Child].

[Father] is familiar with the legal system, having filed legal actions prior as a Plaintiff.

There have been no significant obstacles preventing [Father] from having visitation with [Child].

It is [Child's] desire to he adopted by [Stepfather].

[Appellees] perform all parental duties on behalf of [Child].

[Child] is in good health.

[Child] does well in school.

[Child] is well mannered and behaved.

[Child] is cared for emotionally, physically and developmentally by [Appellees].

Orphans' court opinion and decree, 3/31/25 at 1-3 (numeration omitted).

On March 27, 2024, Appellees filed a petition to involuntarily terminate Father's parental rights to Child, pursuant to Sections §§ 2511(a)(1) and (b). The orphans' court conducted evidentiary hearings on the termination petition on October 31, 2024 and January 7, 2025. All parties were represented by

counsel during these hearings. Child's court-appointed counsel, Cassandra M. Munsee, Esq., was also present at the termination hearings.

As noted, on March 31, 2025, the orphans' court entered a decree, finding by clear and convincing evidence that the termination of Father's parental rights to Child was warranted under Sections 2511(a)(1) and (b), and that termination was in the best interest of Child. **See** orphans' court opinion and decree, 3/31/25 at 27-28. Father filed a timely notice of appeal on April 24, 2025. Father and the orphans' court have complied with Pa.R.A.P. 1925.

Father raises the following issue for our review:

> I. Whether the [orphans'] court erred as a matter of law or abused its discretion in terminating [Father's] parental rights when biological [Mother] created barriers preventing [Father] from establishing contact with [Child] and exercising his parental duties[?]

Fathers' brief at 5.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would

- 5 -

support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation marks omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa.Super. 2019) (citation omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). This Court has defined "clear and convincing evidence" as that which is so

"clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, termination of Father's parental rights to Child was sought pursuant to Sections 2511(a)(1) and (b), which provide as follows:

**§ 2511.  Grounds for involuntary termination**

**(a)    General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b)    Other     considerations.--**The     court     in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.    The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (***en banc***), ***appeal denied***, 863 A.2d 1141 (Pa. 2004).

Instantly, Father does not specifically challenge the orphans' court's findings that there was clear and convincing evidence that he demonstrated a settled purpose of relinquishing his parental claim to Child and failed to perform his parental duties for a period of at least six months prior to the filing of the termination petition. Nor does Father make any specific argument that the orphans' court erred in its evaluation under Section 2511(b). On the contrary, Father baldly contends that his parental rights to Child should not have been terminated because "[Mother] created barriers preventing [him] from establishing contact with [Child] and exercising his parental duties." Father's brief at 8, 15-18.

As noted, an inquiry under subsection 2511(a)(1) focusses on the conduct of the parent for at least a six-month period prior to the filing of the petition. "A court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to the filing of the termination petition." ***In re I.J.***, 972 A.2d 5, 10 (Pa.Super. 2009).

> Though we do not adhere to any strict definition of parental duty, a child has a right to essential parental care, and our jurisprudence reveals certain irreducible qualities of a parent's attendant obligation. Foremost, it is a positive duty requiring affirmative performance. [C]ommunication and association are essential to the performance of parental duty[.] [P]arental duty requires that a parent exert himself to take and maintain a place of importance in the child's life. A parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship, or his rights may be forfeited. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

**Adoption of C.M.**, 255 A.3d 343, 364 (Pa. 2021) (internal citations and quotation marks omitted).

Likewise, under Section 2511(b), trial courts are required to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The "emotional needs and welfare" analysis under Section 2511(b) should include, in part, a child's bond with his or her parent. In doing so, trial courts must examine the effect on the child of severing such a bond, and this includes "a determination of whether the bond is necessary and beneficial to the child, **i.e.**, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." **In the Interest of K.T.**, 296 A.3d 1085, 1113 (Pa. 2023).

Following a thorough review of the record, including Father's brief, the applicable law, and the orphans' court's well-reasoned March 31, 2025 opinion

- 9 -

and decree and its June 13, 2025 Rule 1925(a) opinion, it is our determination that Father's claim on appeal warrants no relief. At the outset, we agree with the orphans' court's determination that the involuntary termination of Father's parental rights to Child was warranted under Section 2511(a)(1). **See** orphans' court opinion and decree, 3/31/25 at 13-17. We further agree with the orphans' court's rationale that the termination of Father's parental rights would best serve the developmental, physical and emotional needs and welfare of Child. **See id.** at 17-19. The orphans' court comprehensively discussed Father's argument that the termination of his parental rights was unwarranted given the alleged barriers put in place by Mother, concluding that this claim was meritless:

> Unfortunately, [Father] has been incarcerated most of [Child's] life. He was in jail in Ohio for about 7 months from September 2018 until his parole in early 2019 on felony drug and gun charges; and then was on supervision until October 29, 2021 when he was arrested in Venango County when 31.27 grams of cocaine, heroin, drug paraphernalia, and a gun were found in the home where his 3 other minor children to a different mother ([Mother's] cousin, [H.B.]) lived. He was convicted by a Venango County Jury and was sentenced to serve 30 months to 60 months in a state correctional facility. He has been incarcerated continuously on those charges from October 29, 2021 and he has been denied parole at each subsequent parole hearing. He has had no contact with [Child] during his incarceration. He has not sent him any cards or gifts for Christmas or his birthday, or letters.
>
> Even when he was not in jail, [Father] failed to make any reasonable efforts to pursue any custody rights even though he is very litigious and has prepared many pleadings in other matters **pro se**. [Father's]

- 10 -

barriers issue is devoid of merit. It is primarily based on the fact that [Mother] did not tell him her new address when she and [Stepfather] bought a home in Venango County in 2022 at a time when there was little to no contact between [Father] and [Mother]. At one point, when [Father] was not incarcerated, [Mother] offered him supervised visits with [Child] which she would have done in her home or with any other acceptable relative. Obviously, [Mother] was not trying to hide her whereabouts if she was willing to have supervised visits in her home. [Father] refused and did not try to negotiate with her. [Mother's] reasons for supervised visits was because of [Father's] criminal conduct and the fact that he had previously entered her home illegally and she found [Father] in [Child's] bedroom. Also, [Father] and [Mother] saw each other out in the community a few times by happenstance and [Father] did not ask for any contact information. [Father's] sister, [A.B.], was in contact occasionally with [Mother] via social media for many years but [Father] did not even ask his sister to obtain contact information.

Moreover, all parties lived in Venango County as did many of their common relatives. [Father's] wife is related to [Mother] and they have many relatives throughout Venango County who could be sources for contact information if [Father] or his wife has mad[e] any real effort. The truth of the matter is that [Father] was knee deep in his own criminal problems and he and his wife had 3 children of their own to care for. Finally, [Father] admitted he simply did not take much action to see [Child].

Hence, the court's finding that the alleged barrier that [Mother] did not advise [Father] of her new address in the same County where she and her extended family have lived for many years was not significant, particularly in light of [Father's] lack of interest in his son.

- 11 -

Orphans' court Rule 1925(a) opinion, 6/13/25 at 2-3 (citations omitted).[1]

Our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court where, as here, they are supported by the record. *See In re T.S.M.*, 71 A.3d at 267. Based on the foregoing, we adopt the orphans' court's comprehensive and well-reasoned analysis above as our own for purposes of this appellate review.

Accordingly, we find that the orphans' court did not abuse its discretion in involuntarily terminating Father's parental rights to Child pursuant to Sections 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/31/2026

---

[1] The orphans' court Rule 1925(a) opinion does not contain pagination. For the ease of our discussion we have assigned each page a corresponding number.